IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                           **Case No. 05-40143-01-RDR**

RICK G.J. PROVOOST,

        Defendant.

## MEMORANDUM AND ORDER

This matter is presently before the court upon defendant's motion to dismiss. The court has held a hearing on the motion. Following the hearing, both sides submitted additional materials to the court. Having carefully reviewed all of the evidence and argument, the court is now prepared to rule.

The defendant is charged with engaging and attempting to engage in at least one sexual act with a female child who has not attained the age of 12 years in violation of 18 U.S.C. § 2241(c). The crime charged is alleged to have occurred on or between January 21, 2000 and November 8, 2002. The defendant seeks to dismiss the indictment on the basis of delay by the government. The defendant argues that the indictment should be dismissed because (1) his rights under the Speedy Trial Act have been violated; (2) his constitutional right to a speedy trial has been violated; (3) his rights under the Interstate Agreement on Detainers Act "may" have been violated; and (4) his right to a trial without unnecessary

delay under Fed.R.Crim.P. 48 has been violated.

During the hearing on this motion, the defendant indicated that the parties were in agreement on the underlying facts. This statement is only partially true since there is some disagreement on certain facts. The court will detail the divergence as we examine the arguments raised by the defendant.

The following facts are either undisputed or supported by the evidence that was presented during the hearing. The defendant was arrested in Newark, New York on April 6, 2005 on charges of sexual abuse of a 4-year-old girl. He entered a guilty plea on June 7, 2005. He was sentenced to a term of five years in New York. During that investigation, information was learned that the defendant may have been involved with another girl in Kansas during the period from 2000 to 2002. Based upon that information, a sealed indictment was returned in this court on November 5, 2005. The warrant arising from that indictment was sent to the defendant's place of incarceration in New York, Groveland Correctional Facility, by FBI Agent Scott Gentine and received on January 4, 2006. Roxanne H. Underwood, the inmate records coordinator at Groveland, lodged a detainer against the defendant and wrote Agent Gentine on January 5, 2006 to so notify him. A copy of the letter was provided to the defendant. The following was contained at the bottom of the letter:

    TO INMATE:
    [ ] This warrant is ineligible for a Speedy Trial

```
[ ] If you wish a Speedy Trial, contact the Law Library
for assistance
[ ] If you wish to waive extradition, please advise
[X] If you wish prompt disposition, sign the attached
form(s) and return to me
```

On January 5, 2006, the defendant received a copy of a form entitled "Notice to Subject of Detainer" from Ms. Underwood. The notice advised the defendant of the charges against him and where the charges were pending. The notice further informed the defendant that he has

> the right to be brought to trial within 180 days after you have caused to be delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court, written notice of your request for a final disposition of the charges against you. Because the 180-day time limit may be tolled by virtue of delays attributable to you, you should periodically inquire as to whether your written notice of request for a final disposition of the charges against you has been received by the appropriate U.S. Attorney and the U.S. District Court. You are hereby advised that the 180-day time limit does not commence until your written notice of request for final disposition of the charges against you has actually been delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court.

The form told the defendant to "execute the following:"

> I have read or have been read the above paragraph notifying me that a Detainer has been lodged against me and that I have the right to demand a speedy trial on the charge(s). I (do) or (do not) (**circle one**) demand a speedy trial on the charge(s). I understand that if I do request a speedy trial, this request will be delivered to the appropriate United States (U.S.) Attorney's Office and U.S. District Court. I also understand that my right under the IADA is to be brought to trial within 180 days after my written notice of request for a final disposition of the charges against me has actually been delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court. I further understand that the 180-day time limit may be tolled by delays

> attributable to me, and that I must periodically inquire as to whether my written notice of request for a final disposition of the charges against me has been received by the appropriate U.S. Attorney and appropriate U.S. District Court. Finally, I understand that if at any time hereafter I desire to demand a speedy trial and have not already done so, I can inform my custodian who will then cause the request to be forwarded as provided above.

The defendant did read and sign the form. However, he failed to indicate whether he demanded a speedy trial. He did not circle either "do" or "do not" as requested by the form. The notice was returned to Agent Gentine. He did not forward the notice to either the United States Attorney's Office or this court because he believed that the defendant had failed to demand a speedy trial by leaving the form blank.

After the 180-day period had passed, the defendant indicated that he contacted Ms. Underwood and asked why the federal agents from Kansas had not been to talk with him concerning the charges in Kansas. The defendant admits this was the only contact he made concerning the detainer.

As the conclusion of his term of imprisonment neared in New York, the defendant made parole plans. He believed that he would be released at the end of his term. He, however, remained in custody following the termination of his New York prison sentence as a result of the detainer.

The defendant appeared for a Rule 5 hearing in the District Court for the Western District of New York on July 13, 2009. He subsequently appeared for arraignment in this court on August 4,

2009.

**SPEEDY TRIAL ACT (STA)**

The defendant contends that the provisions of the STA have been violated here. The defendant argues that his statutory right to a speedy trial was violated because he was not brought to trial within 70 days of January 5, 2006, the date that he received notice of the existence of the detainer. The government asserts that this argument is contrary to the plain language of the STA.

The STA provides that a defendant is entitled to be tried within 70 days of the filing of the indictment or his appearance before a judge of the court in which the indictment is pending, whichever occurs last. 18 U.S.C. § 3161(c)(1). The defense has the burden of supporting the motion, but the government bears the burden of proving delay due to the defendant's unavailability. 18 U.S.C. §§ 3162(a)(2), 3161(h)(3). Under the STA, if a federal prosecutor knows that a person charged with a crime is currently incarcerated, that prosecutor must either (1) obtain the prisoner's presence for trial or (2) file a detainer with the person who has custody of the prisoner and request that the prisoner receive notice of the detainer and his right to demand a trial. 18 U.S.C. § 3161(j)(1). The STA also requires that the person who has custody of the prisoner must

> promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice

5

>to that effect to be sent promptly to the attorney for
>the Government who caused the detainer to be filed.

18 U.S.C. § 3161(j)(2).

Here, the detainer was filed promptly, within 60 days after the indictment was returned. See United States v. Torres-Centeno, 211 F.3d 1279, 2000 WL 377475 at *2 (10th Cir. 2000) (delay of five months between indictment and issuance of writ of habeas corpus ad prosequendum to proper facility was not violation of "promptness" requirement of § 3161(j)(1)). The defendant was advised of the filing of the detainer, but he never informed anyone at the institution that he demanded a speedy trial. On the form that was returned to the FBI, the defendant left blank the portion of the form indicating whether he demanded a speedy trial. Under these circumstances, the starting date for the STA is August 4, 2009, the date of the defendant's first appearance in this court. With that as the starting date, there is little question that the STA has not been violated since 70 days have not been exceeded when excludable time is considered. Even if there were a violation of § 3161(j), dismissal is not an appropriate remedy. See United States v. Cone, 310 Fed.Appx. 212, 215 (10th Cir. 2008).

**INTERSTATE AGREEMENT ON DETAINERS ACT (IADA)**

The defendant suggests that the IADA "may" have been violated. The defendant argues that the 180-day period for trial elapsed after receipt of the detainer because he tried to initiate a request for a timely prosecution. The government contends that the

defendant failed to strictly comply with the requirements of the IADA. Therefore, the government asserts that there has been no violation of the IADA.

The IADA prescribes the procedures for the transfer of prisoners incarcerated in one jurisdiction to the custody of another jurisdiction where criminal charges are pending. The IADA provides an incarcerated prisoner, against whom a detainer is lodged in another jurisdiction, the right to demand trial within 180 days. 18 U.S.C. App. 2, § 2, art. III(a). It is the prisoner's responsibility to "have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint." Id. The 180-day time period detailed in Article III(a) "does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." Fex v. Michigan, 507 U.S. 43, 52 (1993). Thus, even where a prisoner has made a good faith effort to invoke his rights under the IADA, he is not entitled to relief unless adequate notice was actually received. See id. at 49-50.

Here, the defendant contends that he did everything within his control to make sure that his request for a speedy trial was

properly made. The defendant points out that he signed the detainer form as requested and returned the paperwork to the prison officials. He, however, did fail to specifically indicate that he sought a speedy trial by leaving the form blank on this issue. Under these circumstances, the court cannot find that he strictly complied with the IADA procedures. Moreover, the defendant cannot prove actual receipt by the prosecutor and this court. See United States v. Cook, 2007 WL 2287839 at * 2 (D.Kan. 2007); see also United States v. Thomas, 2009 WL 2843584 (4th Cir. 2009) (defendant who signed detainer form but did not make a selection on demand for speedy trial and form was sent only to U.S. Marshals office did not strictly comply with IADA procedures). Any alleged negligence on the part of prison or law enforcement personnel does not excuse noncompliance with the IADA. See Fex, 507 U.S. at 49-52. As a result, dismissal is not warranted because the defendant did not comply with the requirements of the IADA and the 180-day clock never started.

**CONSTITUTIONAL RIGHT TO SPEEDY TRIAL**

The defendant contends that the four-year delay in bringing him to trial violates his constitutional right to a speedy trial. The defendant contends that the delay should be considered presumptively prejudicial and then he should be allowed to address the prejudice from the delay. The government asserts that a review of the various factors applicable under the Sixth Amendment right

to a speedy trial does not show that the defendant's rights were violated.

"A Sixth Amendment speedy trial claim is assessed by balancing: (1) the length of the delay from accusation to trial; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the delay prejudiced the defendant." Jackson v. Ray, 390 F.3d 1254, 1260 (10th Cir. 2004). No one factor is determinative; rather, they are related factors which must be considered together with such other circumstances as may be relevant. Barker v. Wingo, 407 U.S. 514, 533 (1972). It is unusual to find a Sixth Amendment violation when the STA has been satisfied. United States v. Abdush-Shakur, 456 F.3d 458, 464 (10th Cir. 2006). A delay of a trial that approaches one year is presumptively prejudicial. See Doggett v. United States, 505 U.S. 647, 652 n. 1 (1992). If the threshold of delay is satisfied, the first factor must be considered along with the remaining three factors in the speedy trial analysis. Id.

Given the length of the delay here, the court finds that a full inquiry into the other three factors is necessary. The delay factor itself weighs in favor of the defendant since over four years have passed since the filing of the indictment.

On the issue of the reason for delay, the parties have differing views on the facts. The government initially argued that this factor weighs against the defendant. The government pointed

out that the delay was caused by the defendant.  The government notes that the defendant, after committing the crimes charged here, went AWOL from Ft. Riley, Kansas and fled to the State of New York where, after committing a new crime, he was arrested, convicted and served almost five years in prison.  The defendant disagrees and contends that the facts as suggested by the government are not accurate.  The defendant contends that he did not flee Kansas and that records he provided to the court after the hearing show that he was still in the military after he left Kansas.  The court heard no evidence in support of the government's position, and we note that the government appears to have retreated from this position in its post-hearing brief.

The burden is on the government to provide an inculpable explanation for the delay.  Jackson v. Ray, 390 F.3d 1254, 1261 (10th Cir. 2004).  "[D]ifferent weights should be assigned to different reasons."  Barker, 407 U.S. at 531.  Thus, a "deliberate attempt" by the government to delay a trial to gain a tactical advantage over the defense will weigh "heavily" against the government; a more "neutral" explanation such as negligence, while weighted "less heavily," will nevertheless weigh against the government, and a "valid reason" will "justify [an] appropriate delay."  Id. at 531 & n. 32.

The government now only suggests that the defendant caused the delay because he was in custody in another jurisdiction.  There is

little question here that the government was fully aware of where the defendant was during the delay of this case. The government could have sought to prosecute the defendant even though he was in custody in another state. Nevertheless, the court fails to find that the government delayed in order to gain a tactical advantage. Under the circumstances, the court finds that this factor, at least given the lack of any evidence before the court showing that the delay was caused by the defendant, weighs in favor of the defendant.

Next, the court turns to the third factor. "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32. "A pro se criminal defendant does not have to make a procedurally perfect assertion of his speedy trial rights, but must make a 'reasonable assertion' of the right so as to put authorities on notice of his Sixth Amendment claim." Douglas v. Cathel, 456 F.3d 403, 418 (3rd Cir. 2006).

The government argues that the third factor weighs against the defendant, even though the defendant suggests that he did all he could to gain a speedy trial. The facts before the court do not show that the defendant ever sought a speedy trial. He left the form seeking a speedy trial blank. Moreover, he never followed up to see if the notice had been received by the prosecution or the

11

court.  One rather vague effort by the defendant to contact the inmate records coordinator at his prison to check the status of his detainer does not constitute an assertion of his desire for a speedy trial.  Under these circumstances, the court must agree that the defendant failed to actively seek a speedy trial.  This factor weighs heavily in favor of the government.  The mere fact that he filed the instant motion is certainly not enough.  United States v. Batie, 433 F.3d 1287, 1291 (10th Cir. 2006).

Finally, the court considers the issue of prejudice. Prejudice should be assessed in the light of the interests which the speedy trial right was designed to protect:  "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  Barker, 407 U.S. at 532.  "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  Id.

In his motion, the defendant sought to postpone any consideration of this issue until the other factors were considered.  During the hearing on his motion, the court pressed the defendant to articulate the prejudice he has suffered.  He failed to offer any suggestion that the preparation of his case has been harmed by the delay.  Rather, he sought to rely upon the harms noted by Justice Blackmun in his dissent in Fex.  Fex, 507 U.S. at

12

52 (Blackmun, J., dissenting). There, Justice Blackmun reiterated the various problems a prisoner suffers when a detainer has been filed: (1) deprivation of the opportunity to obtain a concurrent sentence with the sentence being served at the time of the detainer; (2) higher prison security classifications; (3) ineligibility for prison assignments or programs due to prison security classification; (4) possible denial of parole or any commutation of sentence; and (5) anxiety and hindrance of rehabilitation process. Id. at 56-57. In his post-trial brief, defendant again mentioned several of the factors noted in the dissent in Fex. He also argued two other factors: (1) loss or inaccessibility to police reports; and (2) diminution of cross-examination.

While the factors noted in the dissent in Fex cannot be minimized, we believe that prejudice showing an impairment to defend against the charges is by far the most significant consideration. In that regard, the court finds the arguments and evidence offered by the defendant woefully lacking. The court has nothing before it to demonstrate that any records in this case have been lost. Even if that were so, there may be other ways to obtain the evidence sought by the defendant. The court further finds the defendant's suggestion that his ability to cross-examine potential witnesses has been hindered is vague and speculative. As pointed out by the government, the passage of time might actually benefit

the defendant more than the government.  In sum, the court finds that this factor weighs heavily in favor of the government.

A thorough review of the factors reveals that the defendant has not demonstrated that his constitutional right to a speedy trial has been violated.  In particular, the court notes that the defendant failed to seek a speedy trial and has failed to note any substantial prejudice caused by the delay.  Although the delay has been lengthy, the court does not find a Sixth Amendment violation.

**FED.R.CRIM.P. 48**

The defendant argues that the court can provide relief through dismissal under Rule 48 even if dismissal is not required by the IADA, the Constitution or the STA.  The defendant suggests that the court has inherent power to dismiss under Rule 48, even where no speedy trial violation is found.

Rule 48(b) provides that a court can dismiss an indictment "if unnecessary delay occurs in bringing a defendant to trial." Fed.R.Crim.P. 48(b).  Courts, including the District of Kansas through Judge Robinson, have determined, however, that dismissal under Rule 48(b) is an "extraordinary power" and courts should not resort to it to dismiss an indictment for undue delay especially "where laws and rules specifically designed to prevent delay do not require dismissal."  United States v. Paredes-Batista, 140 F.3d 367, 376 (2nd Cir. 1998); United States v. Zaragoza, 2007 WL 293891 (D.Kan. 2007).

14

The court does not find it appropriate to grant any relief to the defendant under Rule 48 because the defendant has not demonstrated that the delay in this case violated the STA, the IADA, or the Constitution.

In sum, the court shall deny the instant motion.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Doc. # 26) be hereby denied.

**IT IS SO ORDERED.**

Dated this 10th day of November, 2009 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge